# EXHIBIT A

2023 WL 4053796
Only the Westlaw citation is currently available.
United States District Court, N.D. California.

KEITH CARROLL and REBEKA
RODRIGUEZ, Plaintiffs,
v.
THE J.M. SMUCKER COMPANY,
and DOES 1–25, Defendants.

No. C 22-08952 WHA
|
Filed 06/15/2023

### ORDER RE MOTION TO DISMISS

WILLIAM ALSUP UNITED STATES DISTRICT JUDGE

### INTRODUCTION

**\*1** This putative class action asserts that defendant website owner violated the federal Video Privacy Protection Act ("VPPA") — enacted to prohibit the wrongful disclosure of video tape rental or sale records — by implementing data tracking technology on its website, which collects information about website visitors such as plaintiffs. Defendant moves to dismiss for both lack of personal jurisdiction and failure to state a claim. On the former basis only, Defendant's motion is **GRANTED**.

### STATEMENT

Defendant J.M. Smucker Company is an Ohio corporation with its principal place of business in Orville, Ohio, and it owns and operates the website www.folgerscoffee.com for its Folgers coffee brand. Plaintiff Keith Carroll, a Virginia resident, visited defendant's website in December 2022 and watched a video on the website during the visit. Plaintiff Rebeka Rodriguez, a California resident, visited defendant's website in March 2023 and watched a video on the website during the visit. These were marketing videos by J.M. Smucker "showing consumers enjoying the products and learning how to use the array of their products" (Amd. Compl. ¶¶ 17, 37).

Plaintiffs allege that defendant utilized the "Facebook Tracking Pixel" on its website, which is a software product provided by social media company Facebook that gathers website visitor data to facilitate later targeted advertising. In sum, plaintiffs allege that the browsing data gathered by the Facebook Pixel on defendant's website during their visits was "information sufficiently permitting an ordinary person to identify a specific individual's video viewing behavior" on defendant's website, namely "what Folgerscoffee.com videos a user has watched." According to plaintiffs, because this information was disclosed to Facebook via the Pixel, defendant "did exactly what the VPPA prohibits: they disclosed Plaintiffs' video viewing habits to a third party" (Amd. Compl. ¶¶ 4–40).

Plaintiffs have filed an amended complaint at which defendant's motion is directed. Defendant moves to dismiss plaintiffs' sole VPPA claim under both FRCP 12(b)(2) and 12(b)(6), for lack of personal jurisdiction and failure to state a claim, respectively. This order follows full briefing and slightly abridged oral argument, which was cut short near the end of allotted time due to a medical event.[*]

### ANALYSIS

Only specific personal jurisdiction is at issue. Plaintiffs do not assert that defendant is subject to general jurisdiction (Opp. 2). The latter refers to the ability of a court to exercise jurisdiction outright, including when claims for relief are otherwise untethered to a defendant's relationship with the subject forum. By contrast, the former exists when a suit arises out of or is related to the defendant's contacts with the forum. See *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 261–62, (2017). This order assesses the sufficiency of plaintiffs' asserted basis for jurisdiction: specific personal jurisdiction.

**\*2** Determining whether a forum state may assert specific jurisdiction over a nonresident defendant "focuses on 'the relationship among the defendant, the forum, and the litigation.' " *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U. S. 770, 775 (1984)). "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151,

1154 (9th Cir. 2006) (citation omitted). "The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Ibid.* (citation omitted); FRCP 4(k)(1)(A). Because California's long-arm statute "is coextensive with federal due process requirements," for this district court to exercise personal jurisdiction over a nonresident defendant, "that defendant must have 'certain minimum contacts' with the relevant forum 'such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' "

*Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). To determine whether the exercise of specific jurisdiction over a nonresident defendant so comports, three requirements must be met:

> (1) the defendant must either "purposefully direct his activities" toward the forum or "purposefully avail[ ] himself of the privileges of conducting activities in the forum"; (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)). The burden is on plaintiff to satisfy the first two prongs of the test. If plaintiff is able to do so, the burden then shifts to defendant to "present a compelling case" that exercising jurisdiction would be unreasonable. *Id.* at 1068–69 (citations omitted).

The first prong contains two distinct concepts: availment and direction. The former usually applies to suits sounding in contract, while the latter applies most readily to suits sounding in tort, such as the instant action. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citations omitted). "In tort cases, we typically inquire whether a defendant 'purposefully direct[s] his activities' at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum."

*Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006); *see also Freestream Aircraft (Berm.) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 606 (9th Cir. 2018) (clarifying application of effects test "when dealing with out-of-forum tortfeasors"). This effects test, based on *Calder v. Jones*, 465 U.S. 783 (1984), comprises of three elements: "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *AMA Multimedia, Ltd. Liab. Co. v. Wanat*, 970 F.3d 1201, 1208–09 (9th Cir. 2020) (quoting *Mavrix Photo*, 647 F.3d at 1228).

Plaintiffs' well-pled factual allegations, which are taken as true at this stage, satisfy the first element of an intentional act being committed. Our amended complaint alleges that defendant knowingly implemented the Facebook Pixel on its Folgers website and calibrated it to transmit specific data regarding website visitors (Amd. Compl. ¶¶ 19–27, 32–34, 39, 51, 53). More broadly, defendant's operation of the allegedly offending website is a sufficient intentional act. *See Will Co. v. Lee*, 47 F.4th 917, 922 (9th Cir. 2022) (citations omitted). Defendant's use of the Facebook Pixel on its website is therefore the requisite intentional act committed.

**\*3** Where plaintiffs fall short is the second element. For starters, plaintiffs' arguments are directed at demonstrating defendant's purposeful availment as opposed to purposeful direction. As explained above, because the alleged claim for a privacy violation sounds in tort and not contract, it is purposeful direction that is relevant. Nevertheless, plaintiffs' arguments are pertinent to a purposeful direction analysis as well, and this order thus considers the sufficiency of those arguments in demonstrating defendant's purposeful direction.

"The exact form of our [express aiming] analysis varies from case to case and 'depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue.' " *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) (quoting *Schwarzenegger*, 374 F.3d at 807). Here, the type of conduct alleged sounds in invasion of privacy via a website's functionalities: Plaintiffs' theory is that defendant's website was aimed at California because it is "highly interactive as the gateway to Defendant's online store, and such interactivity is commercial in nature" (Opp. 6–8).

Our court of appeals has considered "the question whether tortious conduct on a nationally accessible website is expressly aimed at any, or all, of the forums in which the website can be viewed" for purposes of specific personal

jurisdiction. *Mavrix Photo*, 647 F.3d at 1229. "On the one hand, we have made clear that 'maintenance of a passive website alone cannot satisfy the express aiming prong.' " *Ibid.* (quoting *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010)). Nevertheless, "[o]n the other, we have held that 'operating even a passive website in conjunction with "something more" — conduct directly targeting the forum — is sufficient.' " *Ibid.* (quoting *Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002)). "In determining whether a nonresident defendant has done 'something more,' we have considered several factors, including the interactivity of the defendant's website, ... the geographic scope of the defendant's commercial ambitions, ... and whether the defendant 'individually targeted' a plaintiff known to be a forum resident." *Ibid.* (citations omitted).

"In *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997), we discussed with approval a sliding scale analysis that looks to how interactive an Internet website is for purposes of determining its jurisdictional effect." *Boschetto v. Hansing*, 539 F.3d 1011, 1018 (9th Cir. 2008) (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)).

Plaintiffs argue that defendant's website offered a level of interactivity that meets the Ninth Circuit's "something more" requirement (Opp. 3–8). Plaintiffs point to a few features of the website as interactive: "[I]t contains a webpage inviting users to sign up to ... [r]eceive emails," "a search dialog box ... that allows users to perform keyword searches of the contents of the Website," "a hyperlink ... that allows users to submit 'General Questions,' 'Product Questions,' and to engage in 'Live Chat' communications with Defendant's representative after inputting the user's personally identifiable information," and "a hyperlink at the top of each webpage that allows the user to search for locations at which to purchase Defendant's products" (Opp. 7). However, plaintiffs cite no decisions that have found such features dispositive.

Rather, decisions that have considered such features cut against plaintiffs' argument. In *Elofson v. Bivens*, a website "that potential clients may submit their name, email address, and telephone number, and ask a question" was considered insufficient because there was "no indication that products may be purchased through the website or that the website offers any special information or incentives to California residents." No. 15-CV-05761-BLF, 2017 WL 566323, at *9 (N.D. Cal. Feb. 13, 2017) (Judge Beth Labson Freeman).

Likewise, even where "users had to register to fully access the Websites," there should be allegations "as to what registration information was required and ... how that information was used to target the California market." *DFSB Kollective Co. v. Bourne*, 897 F. Supp. 2d 871, 881 (N.D. Cal. 2012) (Judge Jacqueline Scott Corley). Absent such allegations here, the general descriptions of website features that plaintiffs rely on do not indicate interactivity sufficiently directed at California to give rise to specific personal jurisdiction.

**\*4** Moreover, our amended complaint does not describe plaintiffs themselves actually interacting with any of those asserted features. Rather, it describes two virtually identical experiences whereby each plaintiff visited the website and "played" a video, with one plaintiff residing in Virginia and the other in California (Amd. Compl. ¶ 37). The accused Facebook Pixel as described indiscriminately tracks data of all website visitors (Amd. Compl. ¶¶ 12, 14, 31–33, 39). Our amended complaint thus contains no facts suggesting interactions related to targeting, given that any website feature plaintiffs point to (which they did not actually interact with here) appears to have offered an identical experience regardless of the forum of access. "If the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution." *Ibid.* (quoting *be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011)). Indeed, "[t]he presence of individualized targeting is what separates these [express aiming] cases from others in which we have found the effects test unsatisfied." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000). At best then, plaintiffs' tort theory sounds in "untargeted negligence" insufficient to support specific personal jurisdiction. *See Schwarzenegger*, 374 F.3d 797, 807 (9th Cir. 2004) (quoting *Calder*, 465 U.S. at 789).

Plaintiffs argue that defendant's website is nevertheless "commercial in nature" because it "functions operationally as the gateway to Defendant's online store" (Opp. 8). However, "that a website is commercial in nature and interactive does not necessarily mean there is personal jurisdiction." *Bourne*, 897 F. Supp. 2d at 881. By plaintiffs' own characterization, defendant's website "is a marketing platform that targets potential customers of Defendant's coffee products, which is intended to encourage them to purchase Defendant's products via its online store" on

a separate website (Opp. 8). But this is not enough. Plaintiffs' description more closely tracks a website which "does not provide any direct means for purchasing parts or requesting services; it simply provides information on the various products manufactured by the [defendant] and redirects potential customers to the appropriate subsidiary."

*Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007). As the Ninth Circuit has explained, "[t]his type of passive website is not purposefully directed to the forum state." *Ibid.* Such websites which "merely advertised" defendant's products, with "no evidence that files were exchanged via the Web site," and were "accessible to anyone in the world with access to the Internet," do not amount to a finding that California residents were specifically targeted. *Lil' Man in the Boat, Inc. v. Auk Ta Shaa Discovery, LLC*, No. 16-CV-01471-JST, 2016 WL 6679558, at *3 (N.D. Cal. Nov. 14, 2016) (Judge Jon S. Tigar) (quoting *Shisler v. Sanfer Sports Cars, Inc.*, 53 Cal. Rptr. 3d 335, 338–40 (Cal. Ct. App. 2006)), *aff'd*, 708 F. App'x 484 (9th Cir. 2018). And, in any event, "[u]nder a traditional jurisdictional analysis, advertising in a forum state does not typically suffice to establish personal jurisdiction." *Boschetto*, 539 F.3d at 1018 n.4 (citations omitted).

Indeed, many of the foregoing decisions finding insufficient website interactivity concerned website interactions directly facilitating the actual sale of an item over the internet. Here, plaintiffs claim to have "purchased Defendants' products multiple times in the past," but our amended complaint makes no showing that plaintiffs' viewing of the videos in question was relevant to any commercial transaction, whether contemplated or actually consummated (Amd. Compl. ¶ 37). Plaintiffs cite decisions finding that online sales to California supported personal jurisdiction, but cite no factual averments (because none were made in our amended complaint) for any relevant transactions here. "For a State to exercise jurisdiction consistent with due process, the defendant's *suit-related conduct* must create a substantial connection with the forum State." *Walden*, 571 U.S. at 284 (emphasis added). This is why plaintiffs' focus on purposeful availment is inapposite, leaving aside that the alleged tort here requires a purposeful *direction* analysis. General references to defendant's online sales to California and plaintiffs' past purchases of Folgers coffee are orthogonal to whether the conduct violative of VPPA alleged here ties to California.

**\*5** This order thus declines to wait for jurisdictional discovery as plaintiffs request, because "jurisdictional discovery regarding Defendant's online sales figures for California versus nationwide sales figures" would not rescue plaintiffs' jurisdictional deficiencies (Opp. 8–9). "In short, [defendant] has done no act and has consummated no transaction, nor has it performed any act by which it purposefully availed itself of the privilege of conducting activities" in California relevant to this action, according to plaintiffs' once-amended pleadings. *Cybersell*, 130 F.3d at 419. Plaintiffs have failed to demonstrate the purposeful direction necessary to show that specific personal jurisdiction exists over defendant here.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss for lack of jurisdiction is **GRANTED**. Plaintiffs have already had the opportunity to amend their complaint once, which they apparently used to add California plaintiff Rodriguez, as the original complaint consisted of only Virginia plaintiff Carroll. There will be no further chances, given that the jurisdictional showing here is so deficient that any sought amendment would be futile. See *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 815 (9th Cir. 2020). Plaintiffs' claim is thus **DISMISSED WITHOUT LEAVE TO AMEND**. The Clerk **SHALL CLOSE THE FILE**.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2023 WL 4053796

## Footnotes

| | |
|---|---|
| \* | Plaintiffs' amended complaint also accuses 25 anonymous Doe defendants who are described as "affiliates" and "agent[s] and/or employee[s]" of defendant J.M. Smucker (Amd. Compl. ¶¶ 7, 8). Our amended complaint provides no basis for distinguishing defendant from any of its unnamed affiliates, agents, or employees, let alone a basis for why such parties are even relevant in this action, and so this order treats the amended complaint as addressing a singular defendant J.M. Smucker. |

**End of Document**  © 2023 Thomson Reuters. No claim to original U.S. Government Works.