# Exhibit A

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH CARROLL, and REBEKA RODRIGUEZ, individually and on behalf of others similarly situated, Plaintiffs, <br><br> v. <br><br> GENERAL MILLS, INC., a Delaware corporation d/b/a BETTYCROCKER.COM; and DOES 1 through 10, inclusive, Defendants. | CV 23-1746 DSF (MRWx) <br><br> Order GRANTING Defendants' Motion to Dismiss (Dkt. 15) and DENYING Plaintiffs' Request for Judicial Notice (Dkt. 17-1) |

Defendant General Mills, Inc. moves to dismiss Plaintiffs Keith Carroll and Rebeka Rodriguez's First Amended Class Action Complaint for a Violation of the Video Protection Privacy Act (VPPA). Dkt. 15 (Mot.) Plaintiffs oppose. Dkt. 17 (Opp'n). The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. For the reasons stated below the motion is GRANTED.

## I. Background

General Mills is a for-profit business with its principal place of business in Minneapolis, Minnesota. Dkt. 12 (FAC) ¶ 8. Betty Crocker and General Mills are General Mills' brands that are widely available

throughout the United States.  <u>Id.</u>  General Mills maintains websites for these brands that offer "multiple videos for consumers to view and play."  <u>Id.</u>  General Mills increases its brand presence through the use of videos.  <u>Id.</u> ¶ 18.

Plaintiff Keith Carroll has purchased and eaten General Mills' products before.  <u>Id.</u> ¶ 48.  He also downloaded General Mills' mobile application at some unknown point in time.  <u>Id.</u> ¶ 49.  Carroll has a Facebook account.  <u>Id.</u> ¶ 34.  In December 2022, he watched a video titled "Today's Experiment, Carbonation Baking" on https://www.bettycrocker.com/.  <u>Id.</u> ¶ 6.  Information identifying Carroll and the video he watched was transmitted by General Mills to Facebook.  <u>Id.</u> ¶ 34.  General Mills uses a Facebook feature called "custom audiences" that enables advertisers like General Mills to identify individuals who have already shown interest in their business.  <u>Id.</u> ¶¶ 13, 34.  This requires the advertisers to supply user data to Facebook.  <u>Id.</u>  User data is supplied to Facebook via the Facebook Tracking Pixel.  <u>Id.</u>  The FAC suggests that General Mills integrated Facebook Tracking Pixel into https://www.bettycrocker.com, where once activated, it captured Carroll's user action and sent a record to Facebook.  <u>Id.</u> ¶¶ 14, 34.  Advertisers like General Mills control what data the Facebook Tracking Pixel collects and how it identifies visitors.  <u>Id.</u> ¶¶ 15-16.  When an individual watches a video on https://www.bettycrocker.com/ while logged into Facebook, the various cookies, including the c user cookie, are transmitted to Facebook.  <u>Id.</u> ¶ 24.  The c user cookie contains the individual's Facebook ID.  <u>Id.</u>  When a user has recently logged out of Facebook, a smaller set of cookies are transmitted to Facebook -- including an fr cookie which contains an encrypted Facebook ID and browser identifier.  <u>Id.</u> ¶¶ 25-26.  Carroll's video viewing behavior was thus disclosed to Facebook by General Mills.  <u>Id.</u> ¶ 34.

Plaintiff Rebeka Rodriguez has previously purchased and eaten General Mills' products.  <u>Id.</u> ¶ 48.  She also downloaded General Mills' mobile application at some unknown point in time.  <u>Id.</u> ¶ 49.  In March 2023, she watched a video titled "LTO Excitement Lucky Cakes" on https://www.generalmillscf.com/.  <u>Id.</u> ¶ 7.  When Rodriguez played the

video on the website, her video viewing behavior was disclosed to Google. Id. ¶ 44. Google Analytics, a part of the Google Marketing Platform, collects and transmits website analytics data to Google via tracking tags on a website. Id. ¶¶ 35-36. There are tracking tags enabled on https://www.generalmillscf.com/ and General Mills controls what data the tracking tag collects. Id. ¶¶ 37, 40, 44. The tracking tags are generally configured to collect data such as IP Address, User Agent String, and Language, as well as "Event Parameter" data, i.e., the interactions, video views, file downloads, and page scrolls. Id. ¶ 38. When a video, such as "LTO Excitement Lucky Cakes," is viewed on the website, Google logs information about the webpage such as the video title and the URL. Id. ¶ 41. A _gid cookie is stored on the browser which is tied to an identifier for a specific Google account. Id. ¶ 42. The "LTO Excitement Lucky Cakes" is the sole Youtube video on the webpage and therefore the video details can be confirmed from the data. Id. ¶ 43. Rodriguez's video viewing behavior was thus disclosed to Google by General Mills. Id. ¶ 44.

On February 3, 2023, Keith Carroll filed this nationwide class action in the Superior Court of California, County of Los Angeles, alleging a violation of the Video Privacy Protection Act 18 U.S.C. § 2710 et seq. Dkt. 1-1. Defendant removed the action on March 8, 2023. On April 10, 2023, Plaintiffs filed an amended pleading adding Rebeka Rodriguez as a named Plaintiff. FAC.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for failure to state a claim upon which relief can be granted. "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007). Allegations contradicted by matters properly subject to judicial notice or by exhibit need not be accepted as true, Produce Pay, Inc. v. Izguerra Produce, Inc., 39 F.4th 1158, 1161 (9th Cir. 2022); and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Nor does

a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." Id. (alteration in original; citation and internal quotation marks omitted). A complaint must "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). This means that the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

Ruling on a motion to dismiss will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] – that the pleader is entitled to relief." Id. at 679 (alteration in original; internal quotation marks and citation omitted).

### III. Analysis

### A. Request for Judicial Notice

Plaintiffs request that the Court take judicial notice of the United States of America's Notice of Intervention filed on December 5, 2022 in Stark v. Patreon, Inc., No. 3:22-cv-03131-JCS, Doc. 49 (N.D. Cal. Dec. 5, 2022) and the United States of America's Memorandum in Support of the Constitutional[i]ty of the Video Privacy Protection Act filed on December 5, 2022 in Stark v. Patreon, Inc., No. 3:22-cv-03131-JCS, Doc. 49-1 (N.D. Cal. Dec. 5, 2022). Dkt. 17-1 at 2.

The Court declines to take judicial notice of the documents. The Court can take judicial notice only of the existence of such documents and not the contents or arguments contained in them. Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc., 99 F. Supp. 3d 1110, 1125 (C.D. Cal. 2015) ("the Court can only take judicial notice of the existence of those matters of public record . . . but not of the veracity of the arguments and disputed facts contained therein.")

(quotation marks omitted).  Plaintiffs' arguments in relation to these documents are centered on the content and arguments contained in the briefing.  See, e.g., Opp'n at 1, 21-23.  And the mere fact that the United States intervened in another case is irrelevant as to whether Plaintiffs have adequately pleaded a cause of action in this case.  The Court will not take judicial notice of irrelevant facts.  Santa Monica Food Not Bombs v. City of Santa Monica, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006) (declining to take judicial notice of two City Council Staff Reports "as they are not relevant to the resolution of this appeal.").

## B.     The Video Privacy Protection Act Claim

The Video Privacy Protection Act provides that "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person . . . ."  18 U.S.C. § 2710(b)(1) (emphasis added).  "[I]n order to plead a plausible claim under section 2710(b)(1), a plaintiff must allege that (1) a defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any customer' to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by section 2710(b)(2)."  Mollett v. Netflix, Inc., 795 F.3d 1062, 1066 (2015).

The Court agrees that Plaintiffs fail to allege even the first prong of a section 2710(b)(1) claim.  The FAC does not adequately allege that Defendants are video tape service providers.

A "'video tape service provider' means any person, **engaged in the business**, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials . . . ."  18 U.S.C. § 2710(a)(4) (emphasis added).  The statute does not cover every company that merely delivers audio visual materials ancillary to its business.  It is confined to those engaged specifically *in the business of* providing audio visual materials.  "When used in this context, 'business' connotes 'a particular field of endeavor,' *i.e.*, a focus of the defendant's work."  In re Vizio, Inc., 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017) (quoting various dictionaries).  Thus "for

the defendant to be 'engaged in the business' of delivering video content, **the defendant's product** must not only be **substantially involved in the conveyance of video content** to consumers but also **significantly tailored to serve that purpose**." Id. (emphasis added). For example, "a letter carrier who physically places a package that happens to contain a videotape into a consumer's mailbox" is not a video tape service provider because "the letter carrier could not be characterized as 'engaged *in the business*' of delivering video content because her job responsibilities are in no way tailored to delivering packages that contain videotapes as opposed to any other package." Id. In general, companies and "developers of many other products or services that might be peripherally or passively involved in video content delivery do not fall within the statutory definition of a video tape service provider." Id. at 1221-22.

Plaintiffs do not allege any facts suggesting that the delivery of audiovisual material is General Mills' particular field of endeavor or that General Mills' products are specifically tailored to serve audiovisual material. As General Mills points out, it is "a company manufacturing and selling cereals, yogurts, cake mixes, dog food, and other products" and it is not engaged in the business of delivering audiovisual material. Mot. at 7 ("General Mills' income comes from making and selling food, not videos. Indeed, the General Mills websites, which Plaintiffs incorporate by reference, provide no indication whatever that General Mills is anything other than a consumer goods company selling food products."). Nothing in the FAC contradicts this characterization of General Mills. Cf. FAC ¶¶ 48 (Plaintiffs allege that they are consumers of General Mills because "[b]oth Plaintiffs have purchased and eaten Defendant's products before.").

The few allegations in the FAC about General Mills' business are conclusory and, at most, indicate that General Mills provides videos as a peripheral part of its marketing strategy. In providing background, Plaintiffs allege "Defendant owns, operates, and/or controls a variety of websites and offers multiple videos for consumers to view and play. Defendant's Betty Crocker and General Mills brands, for which the

Websites are maintained, are widely available throughout the United States and in this District." FAC ¶ 8. Plaintiffs' next allegation is that "[p]art of Defendant's business involves increasing its brand presence via the use of videos. Consistent with its business model, the https://www.bettycrocker.com/ Website delivers embedded and hosted video content" and "Defendant delivers embedded video content on the https://www.generalmillscf.com." FAC ¶¶ 18, 40. Plaintiffs also allege that "Defendant is a "video tape service provider[s]" that creates, hosts, and delivers videos on the Websites, thereby "engag[ing] in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). Defendant also uses the videos to collect and disclose viewers' PII so it can later retarget them for advertisements." FAC ¶ 63; see also id. ¶¶ 45-46 (similar).

Even by Plaintiffs' characterization, the websites are maintained for the brands; they are not the key component of the brands. The videos on the website are part of Defendant's brand awareness, but they are not Defendant's particular field of endeavor. Nothing suggests that Defendant's business is centered, tailored, or focused around providing and delivering audiovisual content.

As Plaintiffs have failed to adequately allege that General Mills is a video tape service provider, the Court declines to consider the remaining arguments in the Motion.

## IV. Conclusion

For the foregoing reasons, General Mills' Motion is GRANTED. Plaintiffs are cautioned to consider carefully the additional arguments made by Defendants. Plaintiffs may amend only if they can do so consistent with the requirements of Rule 11 of the Federal Rules of Civil Procedure. An amended complaint may be filed and served no later than July 20, 2023. Failure to file an amended complaint by that date will waive Plaintiffs' right to do so and the FAC will be dismissed with prejudice. Plaintiffs must provide a redlined version of the amended complaint to the Court's generic chambers email.

IT IS SO ORDERED.

Date: June 26, 2023

Dale S. Fischer
United States District Judge